IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| PENN NATIONAL MUTUAL CASUALTY INSURANCE COMPANY, | ) ) ) |
| Plaintiff, | ) ) |
| v. | )   CIVIL ACTION 07-0524-WS-M ) |
| IPSCO STEEL (ALABAMA), INC., et al., | ) ) |
| Defendants. | ) |

## ORDER

This matter is before the Court on the plaintiff's motion for partial summary judgment as to the defendants' original counterclaim for bad faith. (Doc. 26). The parties have filed briefs and evidentiary materials in support of their respective positions, (Docs. 27, 31, 33), and the motion is ripe for resolution. After carefully considering the foregoing and other relevant material in the file, the Court concludes that the motion for partial summary judgment is due to be denied.

## BACKGROUND

The plaintiff issued a commercial policy of insurance ("the Policy") in favor of third-party defendant TC Construction, Inc. ("TC"). During the policy term, TC entered a contract with IPSCO Steel (Alabama), Inc. ("IPSCO") for the provision of certain services at IPSCO's facility. During the course of this work, TC employee Benjamin McLeod was injured. According to the complaint filed by McLeod and his wife, McLeod was working in a stationary man lift when a crane supplied by IPSCO and operated by IPSCO employee Keith Cooley collided with the man lift, injuring McLeod.

The McLeods sued IPSCO, Cooley, and several fictitious defendants in state court. IPSCO forwarded the complaint to the plaintiff herein and demanded defense and indemnity as an additional insured under the Policy. IPSCO denied coverage in March

2007, but reversed course in May 2007 after receiving additional information from IPSCO. The plaintiff is now defending IPSCO and Cooley in the *McLeod* litigation under a reservation of rights. In that portion of their bad faith counterclaim to which this motion is addressed, the defendants assert that IPSCO's March 2007 denial constitutes a bad faith refusal to honor a claim.[1]

## DISCUSSION

The parties agree that the Policy extends coverage to certain additional insureds, "but only with respect to liability ... caused, in whole or in part, by: (1) Your acts or omissions; or (2) The acts or omissions of those acting on your behalf ...." (Doc. 27 at 7; Doc. 31 at 3). They also agree that IPSCO — and, according to the defendants, Cooley, (Doc. 31 at 3) — is an additional insured under the Policy and that, pursuant to the quoted language, the Policy provides coverage to the defendants only if their liability was caused, at least in part, by the acts or omissions of TC or those acting on TC's behalf, including TC's employees. (Doc. 27 at 5, 10; Doc. 31 at 2).[2]

"Whether an insurance company owes its insured a duty to provide a defense in proceedings instituted against the insured is determined primarily by the allegations contained in the complaint. ... If the allegations of the injured party's complaint show an

---

[1]Shortly after the close of briefing on the instant motion, IPSCO and Cooley sought leave to amend their counterclaims, including by expanding the bad faith claim to include an allegation that the plaintiff refused to settle the *McLeod* litigation, and/or fund a settlement of it, without a lawful basis therefor. (Doc. 34). This motion was granted over the plaintiff's objection. (Doc. 41).

[2]The defendants express concern that the plaintiff takes the position there is coverage only if their liability is *completely* due to the acts and omissions of TC and those acting on its behalf. (Doc. 31 at 7). While the plaintiff does hint at such an argument, (Doc. 33 at 6) — which would appear to be inconsistent with both the plain language of the Policy and the plaintiff's acceptance of defense in May 2007 on the grounds that the defendants accused McLeod of contributory negligence, (Doc. 27 at 5) — it does not advance the argument as a basis for granting its motion.

accident or occurrence within the coverage of the policy, then the insurer is obligated to defend, regardless of the ultimate liability of the insured." *Hartford Casualty Insurance Co. v. Merchants & Farmers Bank*, 928 So. 2d 1006, 1009 (Ala. 2005) (internal quotes omitted). "However, [t]his Court ... has rejected the argument that the insurer's obligation must be determined solely from the facts alleged in the complaint in the action against the insured." *Id*. at 1010 (internal quotes omitted). "[I]f there is any uncertainty as to whether the complaint alleges facts that would invoke the duty to defend, the insurer must investigate the facts surrounding the incident that gave rise to the complaint in order to determine whether it has a duty to defend the insured." *Id*. (internal quotes omitted). The plaintiff concedes that, when an insurer fails to investigate when such a duty arises under the "any uncertainty" test, Alabama allows a claim for bad faith failure to investigate. (Doc. 27 at 18).

When the plaintiff denied coverage in March 2007, it had received only the complaint and a bland cover letter demanding coverage, plus the purchase order and certificates of insurance. (Doc. 27, Exhibits, D, H).[3] The plaintiff argues that the complaint did not establish the existence of coverage, because it did not on its face affirmatively demonstrate that the liability of IPSCO and Cooley was based, at least in part, on an act or omission of TC or any of its employees. The plaintiff continues that IPSCO submitted no additional material to supply the deficiency. Finally, the plaintiff asserts that the complaint did not raise any uncertainty so as to trigger a duty to investigate before denying coverage. The defendants challenge only the last of these propositions. They offer several reasons for arguing that a duty to investigate was triggered, but one is dispositive.

As noted, the *McLeod* complaint named several fictitious parties as defendants. The last of these was described as "that person or entity, or those persons or entities

---

[3]There also had been either written or oral communication from IPSCO's retained counsel, (*id*., Exhibit H at 1), but neither side identifies it or relies on it.

whose negligence, wantonness and/or other wrongful conduct caused and/or contributed to cause the Plaintiffs' injuries and damages in the incident made the basis of this suit." (Doc. 27, Exhibit C at 1). There is nothing in this description that excludes an employee of TC as being one such person. The body of the complaint describes the negligence of this fictitious defendant as including negligence in "the failure to property [sic] and adequately instruct and/or warn the crane operator or others of the dangers and risks associated with the use and/or operation of the crane ...." (Doc. 27, Exhibit C at 5). Assuming without deciding that the complaint excludes TC employees from any responsibility with respect to the operation, inspection, maintenance, repair or equipping of the crane (all of which faults are alleged against various fictitious defendants), it does not exclude TC employees from any responsibility for instructing or warning fellow employee McLeod (who was working in proximity to the crane) about the dangers and risks associated with the use and/or operation of the crane.

The plaintiff does not address this material. Instead, it argues that TC itself could not be a fictitious defendant as described in the complaint. (Doc. 33 at 11). That may be so, but it is also irrelevant, since the duty to defend would follow if a TC employee acting on behalf of TC were a fictitious defendant, even if TC itself were not.

The parties, and thus the Court, take the phrase "any uncertainty" literally.[4] Because the complaint raises the requisite uncertainty as to whether a TC employee acting on TC's behalf was a fictitious defendant, the Court cannot conclude on this record and argument that the plaintiff had no duty to investigate before denying defense.[5]

The plaintiff argues that, even though it denied coverage in March 2007, and even if it conducted an inadequate investigation before doing so, it cannot be liable for bad

---

[4] The plaintiff uses the term "any doubt" as a synonym. (Doc. 33 at 6, 11).

[5] In a footnote, the plaintiff declares that it conducted such an investigation before the March 2007 denial. (Doc. 27 at 12 n.2). It does not, however, provide evidence of its investigation or seek summary judgment on this ground.

faith because it offered to consider any additional information the defendants cared to submit, and because it reversed its denial in May 2007 after the defendants provided such information. (Doc. 27 at 20-22; Doc. 33 at 14-15). For support, the plaintiff relies on the first-party cases of *Harrington v. Guaranty National Insurance Co.*, 628 So. 2d 323 (Ala. 1993), and *Gillion v. Alabama Forestry Association*, 597 So. 2d 1315 (Ala. 1988).

In *Gillion,* the initial denial was based on information from the plaintiff that unambiguously showed the loss occurred before the policy became effective, and the Court held that "[a]n insurer has the right to take an insured's statements on their face and to assume their truth." The insurer approved the claim within two weeks of receiving corrected information from the plaintiff. 597 So. 2d at 1321. In *Harrington*, the initial denial was based on the insurer's ignorance of a 19-year-old Alabama Supreme Court opinion that voided the policy provision on which the denial was based. The insurer approved the claim within three days of being informed of the opinion. 628 So. 2d at 326-27.

The plaintiff appears to believe that *Gillion* and *Harrington* permit an insurer to "unring the bell" and cure an actionable failure to investigate. That conclusion is far from obvious. In *Gillion*, the insurer had the right to assume the truth of the plaintiff's information, which unambiguously showed the absence of coverage, so there could scarcely have been a duty to investigate further before denial. Moreover, *Gillion* relied on *King v. National Foundation Life Insurance Co.*, 541 So. 2d 502 (Ala. 1989), in which the insurer denied benefits based on medical records showing on their face the absence of coverage. In language adopted in *Gillion*, 597 So. 2d at 1321, the *King* Court held that, because it re-opened the matter after receiving additional information, the insurer "did not [fail to] investigate the claim *once it received evidence that the report it had based its denial on might have been incorrect*." *Id*. at 505 (emphasis added). *King*, and *Gillion*, address only an alleged failure to investigate after an unambiguously correct denial is

drawn into question by the receipt of additional information.[6] *Harrington* never stated whether the insurer's ignorance of Alabama law resulted from a wrongful failure to investigate, declaring only that the insurer's reversal of denial three days after being made aware of the decision negated the element of intent. 628 So. 2d at 326-27.

Even if *Gillion* and *Harrington* could be stretched to address the curing of an initial failure to investigate, on their facts they appear to extend that principle only to: (1) a first-party claim; (2) in which the policy and evidence submitted before denial unambiguously demonstrate the absence of coverage; (3) the insurer offers to consider additional information; and (4) the insurer rapidly reverses its initial denial upon receipt of such information. The plaintiff can satisfy only the third of these elements.

With respect to the first criterion, the defendants presented a third-party claim, which carries with it the specialized requirement of investigation unless the complaint and/or other submitted documents negate coverage; as far as the Court has been able to determine, insurers in the first-party context are not required to investigate every time they possess less than 100% certainty. With respect to the second element, as discussed above the complaint did raise an uncertainty as to whether coverage existed. With respect to the fourth, the two months the plaintiff delayed after receiving additional information before changing its decision[7] compares unfavorably with the three and fourteen days involved in *Harrington* and *Gillion*, respectively.

On the record and argument presented, the Court cannot conclude that the plaintiff's reversal of its initial denial of coverage was sufficient to cure any actionable failure to investigate preceding that denial.

Finally, the plaintiff argues that it is entitled to summary judgment because the defendants have no compensable damages in play. (Doc. 27 at 23-24; Doc. 33 at 4-6).

---

[6]*Gillion*'s suggestion that it was considering the propriety of the initial denial, 597 So. 2d at 1321, is belied by the discussion above.

[7](Doc. 27, Exhibits I, J).

With respect to Cooley, it acknowledges that available compensatory damages include mental anguish, but without amplification it denies that Cooley seeks them. (*Id*. at 4 n.1). The bad faith counterclaim, however, alleges that the defendants "have suffered damages," (Doc. 14 at 7), and the plaintiff has not explained how this inclusive damage manages to exclude mental anguish. Nor does the plaintiff respond to the defendants' representation that their initial disclosures identify Cooley's mental anguish as an element of damages. (Doc. 31 at 11).

With respect to IPSCO, the plaintiff asserts that the only legally available form of compensatory damage is IPSCO's costs of defending the *McLeod* litigation before the plaintiff stepped in, and it argues that the defendants' own documents demonstrate that it incurred no such costs because TC's workers' compensation insurer absorbed them. (Doc. 27 at 23-24; Doc. 33 at 4).

For the proposition that only defense costs can be awarded, the plaintiff relies exclusively on *Acceptance Insurance Co. v. Brown*, 832 So. 2d 1 (Ala. 2001). That case, however, lays down no absolute rule but merely notes that the cost of defending the underlying lawsuit (and mental anguish) were the only forms of compensatory damages claimed by the plaintiff. *Id*. at 21. *Brown* is therefore insufficient to defeat the defendants' argument that IPSCO can recover payments made to retained counsel to monitor the *McLeod* litigation and to secure coverage from the plaintiff. (Doc. 31 at 11). Even if IPSCO is limited to the cost of defending the *McLeod* litigation, the plaintiff has not responded to the defendants' argument that the collateral source rule prevents it from reducing IPSCO's recovery by the amounts paid by the worker's comp carrier. (*Id*).

On the record and argument presented, the Court cannot conclude that the defendants have no compensable damages.

## CONCLUSION

For the reasons set forth above, the plaintiff's motion for partial summary

judgment is **denied**.

DONE and ORDERED this 10th day of March, 2008.

s/ WILLIAM H. STEELE  
UNITED STATES DISTRICT JUDGE
