IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| PENN NATIONAL MUTUAL | ) | |
| CASUALTY INSURANCE COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION 07-0524-WS-M |
| | ) | |
| IPSCO STEEL (ALABAMA), INC., et al., | ) | |
| | ) | |
| Defendants. | ) | |

ORDER

This matter is before the Court on the motion of plaintiff Penn National Mutual Casualty Insurance Company ("Penn") to strike the jury demand asserted by defendants IPSCO Steel (Alabama), Inc. ("IPSCO") and Keith Cooley on their counterclaims against Penn. (Doc. 72). The parties have filed briefs in support of their respective positions, (Docs. 72, 76, 77), and the motion is ripe for resolution. After carefully considering the foregoing and other relevant materials in the file, the Court concludes that the motion is due to be granted in part and denied in part.

BACKGROUND

IPSCO hired TC Construction, Inc. ("TC") to perform electrical work at IPSCO's facility. In the course of this work, TC employee Benjamin McLeod was injured, allegedly due to the negligence of Cooley, IPSCO's employee. McLeod sued IPSCO and Cooley in state court, which suit they eventually settled.

Before beginning work, TC agreed to IPSCO's General Conditions of Contract ("General Conditions"), (Doc. 42 at 4), to which only IPSCO and TC were signatories. This document obligated TC to obtain and maintain commercial general liability ("CGL") insurance covering TC's operations and naming IPSCO as an additional insured on a primary basis for liability arising out of or in relation to TC's work under the General

Conditions. (Doc. 42 at 4-5). Penn initially denied coverage for the *McLeod* litigation but later provided a defense under a reservation of rights. It filed this action seeking a declaration that IPSCO and Cooley are entitled to neither defense nor indemnity. In their counterclaims, IPSCO and Cooley sue Penn for breach of insurance contract, bad faith denial of their claim, bad faith failure to settle the *McLeod* lawsuit, and negligent/wanton failure to settle. (Doc. 42 at 8-10).

The General Conditions, which were drafted by IPSCO's attorneys and submitted by its purchasing manager to TC for signature,[1] include the following provision:

> **Waiver of Jury Trial.** The parties hereby agree that any court proceedings, actions or suits which may be brought under, related to or by virtue of this Agreement or the business relationship between the parties shall be determined by a court sitting without a jury. THE PARTIES HEREBY WAIVE ANY RIGHT TO A JURY TRIAL.

(Doc. 72, Exhibit B, ¶ 1.14 (emphasis in original)). Penn argues that this provision precludes the defendants from obtaining a jury trial on their counterclaims.

## DISCUSSION

The Eleventh Circuit has not decided which party has the burden of proving the applicability of a contractual waiver of jury trial. *Bakrac, Inc. v. Villager Franchise Systems, Inc.*, 164 Fed. Appx. 820, 824 n.1 (11th Cir. 2006). Penn, however, accepts the burden. (Doc. 72 at 4 n.3). Penn asserts that federal law governs the determination of the applicability of such a waiver, (Doc. 72 at 4), and the defendants do not respond. Thus, and because Penn's position appears to represent the correct rule,[2] the Court accepts it for

---

[1](Doc. 72, Exhibit C at 3-4; *id*., Exhibit D at 21; *id*., Exhibit E).

[2]*See Tracinda v. DaimlerChrysler AG*, 502 F.3d 212, 222 (3rd Cir. 2007) ("The question of a waiver of a constitutional right, including the Seventh Amendment right to a jury trial, is a federal question controlled by federal law," and "[f]ederal courts apply federal law in determining whether a contractual jury trial waiver is enforceable."); *Merrill Lynch & Co. v. Allegheny Energy, Inc.*, 500 F.3d 171, 188 (2nd Cir. 2007);

purposes of deciding the instant motion.

"[A]s the right of jury trial is fundamental, courts indulge every reasonable presumption against waiver." *Aetna Insurance Co. v. Kennedy ex rel. Bogash*, 301 U.S. 389, 393 (1937); *accord LaMarca v. Turner*, 995 F.2d 1526, 1544 (11th Cir. 1993). In the contractual waiver context, overcoming the presumption requires that the waiver be knowing and voluntary. *Bakrac*, 164 Fed. Appx. at 823-24 ("A party may validly waive its Seventh Amendment right to a jury trial so long as the waiver is knowing and voluntary."); *accord Tracinda Corp. v. DaimlerChrysler AG*, 502 F.3d 212, 222 (3rd Cir. 2007); *Merrill Lynch & Co. v. Allegheny Energy, Inc.*, 500 F.3d 171, 188 (2nd Cir. 2007); *Leasing Service Corp. v. Crane*, 804 F.2d 828, 832 (4th Cir. 1986).

"In making this assessment [of whether a contractual waiver of jury is knowing and voluntary], courts consider the conspicuousness of the waiver provision, the parties' relative bargaining power, the sophistication of the party challenging the waiver, and whether the terms of the contract were negotiable." *Bakrac*, 164 Fed. Appx. at 823-24. If the waiver is knowing and voluntary under this test, and if the claims asserted are of the sort addressed by the waiver, a non-signatory may enforce the waiver. *Medical Air Technology Corp. v. Marwan Investment, Inc.*, 303 F.3d 11, 19 (1st Cir. 2002); *Bakrac, Inc. v. Villager Franchise Systems, Inc.*, 2003 WL 25730511 at *4 (S.D. Fla. 2003); *Evans v. Union Bank of Switzerland*, 2003 WL 21277125 at *4 (E.D. La. 2003); *Okura & Co. v. Careau Group*, 783 F. Supp. 482, 488-90 (C.D. Cal. 1991).

Given the *Bakrac* criteria, IPSCO's waiver of jury was certainly knowing and

---

*Medical Air Technology Corp. v. Marwan Investment, Inc.*, 303 F.3d 11, 18 (1st Cir. 2002) ("In a diversity jurisdiction suit, the enforcement of a jury waiver is a question of federal, not state, law."). *Contra IFC Credit Corp. v. United Business & Industrial Federal Credit Union*, 512 F.3d 989, 994 7th Cir. 2008) ("[W]e hold that state law governs the validity of a bench-trial agreement ...."). The *IFC Credit* Court did not acknowledge the Supreme Court's pronouncement that "[t]he question of a waiver of a federally guaranteed constitutional right is, of course, a federal question controlled by federal law." *Brookhart v. Janis*, 384 U.S. 1, 4 (1966).

voluntary, since IPSCO itself drafted and propounded the provision.  The defendants concede the point.  (Doc. 76 at 8).  Under the authorities cited above, the only remaining question is whether the counterclaims fall within the language of the waiver.

The defendants, however, would insert an additional step, proffering as "[t]he general rule" that "jury waiver provisions cannot be enforced by a non-signatory to the agreement," unless the non-signatory is a third party beneficiary.  (Doc. 76 at 2-3).  Since Penn concedes it is not a third party beneficiary of the General Conditions, (Doc. 77 at 2), the defendants claim victory.

The defendants cite three cases in support of their position.  The first dealt with the ability of a non-signatory to sue for breach of contract under Alabama law.  *Dunning v. New England Life Insurance Co.*, 890 So. 2d 92, 97 (Ala. 2003).  Penn, however, is not suing the defendants for breach of contract, and the question of waiver of jury trial is governed by federal law, not state law.  The other cases treated jury waiver as a "contractual right" of the parties thereto.  *Paracor Finance, Inc. v. General Electric Capital Corp.*, 96 F.3d 1151, 1166 (9th Cir. 1996); *Pancakes of Hawaii, Inc. v. Pomare Properties Corp.*, 944 P.2d 97, 106 (Haw. App. 1997).   These cases thus focused on the *status* of the party *invoking* the waiver rather than on the objective *intent* of the party *making* the waiver, as the governing "knowing and voluntary" standard requires.  None of the defendants' authorities contains reasoning sufficient to persuade the Court to abandon the standard set forth in *Bakrac* and like cases.  The Court therefore proceeds to determine whether the language of the jury waiver provision extends to the defendants' counterclaims.

The defendants do not dispute that their counterclaims represent  "court proceedings, actions or suits" within the scope of the jury waiver provision.  The question is whether the counterclaims are "brought under, related to or by virtue of [the General Conditions] or the business relationship between [IPSCO and TC]."

"Where there is no indication that the terms of the contract are used in a special or

technical sense, they will be given their ordinary, plain and natural meaning." *Homes of Legend, Inc. v. McCullough*, 776 So. 2d 741, 746 (Ala. 2000). "The term 'related to' is typically defined more broadly and is not necessarily tied to the concept of a causal relation. ...  Courts have similarly described the term 'relating to' as equivalent to the phrases 'in connection with' and 'associated with,' ... and synonymous with the phrases 'with respect to' and 'with reference to' ...." *Coregis Insurance Co. v. American Health Foundation, Inc*., 241 F.3d 123, 128-29 (2nd Cir. 2001).  Penn proposes that the Court employ this definition, (Doc. 72 at 7-8), and the defendants offer no  alternative.[3]  As reflected below, the counterclaims would be related to the General Conditions even were a considerably more restrictive definition utilized.

The counterclaims make the following relevant assertions:  that the General Conditions obligated TC to purchase a CGL policy naming IPSCO and its employees as additional insureds; that TC acquired, and provided IPSCO, a certificate of insurance identifying IPSCO as an additional insured under TC's CGL policy with Penn; that the Policy itself makes the defendants additional insureds by defining "who is an insured" to include "[a]ny person(s) or organization(s) ... with whom [TC is] required in a written contract or agreement to name as an additional insured"; that Penn denied the defendants' claim; and that Penn, after later accepting defense under a reservation of rights, refused to settle the *McLeod* litigation.  The defendants assert counterclaims against Penn for breach

----

[3]Penn's proposed definition is compatible with Eleventh Circuit precedent in the arbitration context:  "When each of a signatory's claims against a nonsignatory makes reference to or presumes the existence of the written agreement, the signatory's claims arise out of and relate directly to the written agreement ...." *MS Dealer Service Corp. v. Franklin*, 177 F.3d 942, 947 (11th Cir. 1999) (internal quotes omitted).

The defendants suggest vaguely that language waiving constitutional rights should be subject to narrow interpretation and that "contracts containing a jury waiver must be construed narrowly."  (Doc. 76 at 4, 7).  As their own authority reflects, however, this narrowness is enforced by the "knowing and voluntary" requirement, not by limiting the scope of the waiver in a manner inconsistent with its terms.  *Morgan Guaranty Trust Co. v. Crane*, 36 F. Supp. 2d 602, 603-04 (S.D.N.Y. 1999).

of the insurance contract; bad faith denial of their claim; bad faith failure to settle the *McLeod* lawsuit; and negligent/wanton failure to do so. (Doc. 42 at 4-12).

It is evident from these allegations that the defendants' counterclaims against Penn do not merely relate to the General Conditions but are dependent upon them. Each of the counterclaims against Penn requires as a predicate that the defendants be insured under the Penn policy, and to establish this status the defendants rely on that provision of the Penn policy defining additional insureds as including organizations and persons whom TC is required by written contract to name as additional insureds. The "written contract," of course, is the General Conditions. Thus, the defendants cannot establish any of their counterclaims without relying on the General Conditions to establish their status as insureds under the Penn policy. The defendants concede that they must invoke the General Conditions in order to establish Penn's liability. (Doc. 76 at 4-5).[4]

The defendants nevertheless suggest other reasons for reaching a contrary result. First, they invoke cases generally supporting the proposition that an insurer's liabilities and obligations ultimately stem from its policy, not other documents. (Doc. 76 at 4-6, 8-9). This may be so in many cases, but when as here the policy makes coverage contingent of the existence of another document, the insurer's liabilities and obligations necessarily depend on that other document. The defendants' cases may be sufficient to show that the counterclaims are not "brought under" the General Conditions, (*id.* at 8), but they say nothing about whether the counterclaims are "related to" the General Conditions.

Second, the defendants assert there is no precedent for allowing an insurer to enforce a jury waiver provision, especially a non-signatory insurer. (Doc. 76 at 6). The

---

[4]Each of the counterclaims alleges that the defendants are both additional insureds and third-party beneficiaries of the policy. (Doc. 42 at 8-10). The defendants do not rely on the latter theory in opposition to the motion to strike. (Doc. 76 at 4-5). Even had they done so, their alternative theory that they are additional insureds applies to each of their claims and, as discussed in text, requires them to rely on the General Conditions to establish liability.

flip side, of course, is that there is no precedent disallowing such a result.  The defendants' point appears to be that the Alabama Insurance Commission is opposed to efforts by insurers to insert jury waiver provisions in insurance policies.  (*Id*. at 6 n.3).  Assuming this is so, Penn has no jury waiver provision in its policy, nor it is "attempt[ing] to incorporate into its Policy unapproved terms from a separate contract." (*Id*.).  The waiver of jury trial is a result of IPSCO's insistence on such a provision in its own document, not an insurer's imposition of a waiver.

The foregoing discussion establishes that IPSCO has waived any right to a jury on its counterclaims against Penn.  Penn argues that the same result obtains with respect to Cooley, (Doc. 72 at 6 & n.6), but does not explain why.  Since Cooley was not a signatory to the General Conditions and has not been shown even to have been aware of the jury waiver provision, it is not immediately apparent how he, as opposed to IPSCO, could have "knowingly and voluntarily" waived his right to jury trial.

## CONCLUSION

For the reasons set forth above, the motion to strike is **granted** as to IPSCO and **denied** as to Cooley.

DONE and ORDERED this 8th day of September, 2008.

s/ WILLIAM H. STEELE
UNITED STATES DISTRICT JUDGE